UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA TEMPLE, | No. 2:23-cv-00759-DAD-CKD |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION TO STAY THIS ACTION |
| ACTION WATER SPORTS OF INCLINE VILLAGE, LLC, et al., | (Doc. No. 23) |
| Defendants. | |

This matter is before the court on defendants' motion to stay this action pending final resolution of plaintiff's state court proceedings. (Doc. No. 23.) On January 5, 2024, the pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 26.) For the reasons explained below, the court will grant defendants' motion to stay this action.

**BACKGROUND**

This personal injury tort action arises from a motorboating accident that allegedly occurred on August 4, 2020 when plaintiff Laura Temple was swimming in Lake Tahoe and was ran over by a boat that she and her colleagues had rented. (Doc. No. 1.)

On January 27, 2022, plaintiff filed a complaint in the Los Angeles County Superior Court against the following eight named defendants: Action Water Sports of Incline Village, LLC ("AWS") (the boat rental company); Gary Scott (a manager of AWS); David Ceruti (a manager of

1

AWS); E.B. (an employee of AWS); Michael Goodwin (a colleague of plaintiff); Shawn Willette (a colleague of plaintiff); Zakaria Stour (a colleague of plaintiff); and Brenda Poot (a colleague of plaintiff). (Doc. No. 23-4.)[1] In that complaint, plaintiff brought three claims: (1) a negligence claim brought against defendants AWS, Scott, Ceruti, and E.B., ("the AWS defendants"); (2) a claim brought against the AWS defendants for violating Nevada Revised Statute § 488.730, which imposes duties on persons engaged in the business of renting motorboats; and (3) a negligence claim against defendants Goodwin, Willette, Stour, and Poot. (*Id.*) Plaintiff seeks damages in her prayer for relief in that complaint. (Doc. No. 23-4 at 16.)

On October 28, 2022, defendant AWS filed a motion to transfer venue of plaintiff's state court action to either Placer County or El Dorado County on the grounds that Los Angeles County was an inappropriate forum due the fact that the incident occurred on Lake Tahoe and many witnesses reside in the Lake Tahoe area. (Doc. No. 23-5.) Plaintiff vigorously opposed that motion in a lengthy opposition brief, with over one hundred pages of declarations and exhibits. (Doc. No. 23-9.) Plaintiff also requested to be heard by that court, which thereafter held a hearing on March 23, 2023. (*See* Doc. No. 23-6 at 5.) After oral argument, that court granted defendant AWS's motion to transfer venue and directed the parties to meet and confer regarding which county—Placer or El Dorado—was preferable. (*Id.* at 9.) On April 27, 2023, the parties filed a stipulation informing the court that Placer County Superior Court was preferred. (Doc. No. 23-7.) Plaintiff's state court action was then transferred to Placer County Superior Court on May 24, 2023 (hereinafter, "the State Court Action"). (Doc. No. 23-8 at 2.)

Shortly after the Los Angeles Superior Court ruled in favor of defendant AWS on its motion to transfer venue, but before that action was transferred and received by the Placer County

---

[1] In connection with the pending motion, defendants filed an unopposed request that the court take judicial notice of six court records from plaintiff's state court proceedings. (Doc. No. 23-3.) A federal court may take judicial notice of documents filed in related state court actions. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings in other courts where those proceedings have a "direct relation to matters at issue"). Thus, the court will grant defendants' request for judicial notice of these state court records.

1  Superior Court, plaintiff filed an identical complaint initiating this federal action.  Specifically, on
2  April 21, 2023, nearly a month after the Los Angeles Superior Court's adverse ruling granting the
3  transfer of venue, plaintiff filed her complaint in this federal court.  (Doc. No. 1.)  As with the
4  State Court Action, in this federal action, plaintiff brings the same exact three claims against the
5  same defendants based on the same allegations and seeks the same relief.  (*Compare* Doc. No. 2-4
6  *with* Doc. No. 1.)

7  On December 22, 2023, defendant AWS, Scott, and Ceruti (hereinafter, "defendants")
8  filed the pending motion to stay this action, pursuant to the *Colorado River*[2] doctrine, pending
9  final resolution of plaintiff's parallel state court proceedings.  (Doc. No. 23.)  On January 26,
10 2024, plaintiff filed an opposition to the pending motion, and on February 5, 2024, defendants
11 filed their reply thereto.  (Doc. Nos. 27, 28.)

## LEGAL STANDARD

13 Although federal courts have a "virtually unflagging obligation . . . to exercise the
14 jurisdiction given them," the Supreme Court has recognized that federal courts may dismiss or
15 stay a case "in situations involving the contemporaneous exercise of concurrent jurisdictions . . .
16 by state and federal courts."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S.
17 800, 817(1976).  This power stems from the court's "considerations of 'wise judicial
18 administration, giving regard to conservation of judicial resources and comprehensive disposition
19 of litigation.'"  *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183
20 (1952)).  The court's power to stay or dismiss a case under *Colorado River*, however, is
21 "considerably . . . limited" and only applies in "exceptional" circumstances.  *Id.* at 818.

22 In the Ninth Circuit, eight factors are to be considered in determining the appropriateness
23 of a stay under *Colorado River*:

24 /////
25 /////
26 /////
27

---

28  [2] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

(1) which court first assumed jurisdiction over any property at
                    stake; (2) the inconvenience of the federal forum; (3) the desire to
                    avoid piecemeal litigation; (4) the order in which the forums
                    obtained jurisdiction; (5) whether federal law or state law provides
                    the rule of decision on the merits; (6) whether the state court
                    proceedings can adequately protect the rights of the federal
                    litigants; (7) the desire to avoid forum shopping; and (8) whether
                    the state court proceedings will resolve all issues before the federal
                    court.

*R.R. Street & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011) (citing *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002)). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. Some factors may not apply in some cases, and, in some cases, a single factor may decide whether a stay is permissible." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (internal quotations and citations omitted).

       In the Ninth Circuit, particular attention is paid to the eighth factor: "In this Circuit, the narrow *Colorado River* doctrine requires that the pending state court proceeding resolve all issues in the federal suit." *Holder*, 305 F.3d at 859. Indeed, if "there exists a substantial doubt as to whether the state court proceeding will resolve all of the disputed issues in [the federal] case, it is unnecessary for [the court] to weigh the other factors included in the *Colorado River* analysis." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993). "When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). In addition, courts should be "particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989).

       "Within the Ninth Circuit, district courts must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*." *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990).

4

## ANALYSIS

In the pending motion, defendants argue that based on consideration of the *Colorado River* factors, the court should stay this action and defer to the State Court Action, which has been pending since January 27, 2022. (Doc. No. 23.) Indeed, defendants' motion provides analysis as to each of those factors. (Doc. No. 23-1 at 5–9.)

Plaintiff, on the other hand, does not address any of the *Colorado River* factors whatsoever in her opposition to defendants' motion. Rather, plaintiff advances several irrelevant arguments, devoting more than half of the argument section of her opposition brief to discussing various other abstention doctrines that have not been raised by defendants in the pending motion. (Doc. No. 27 at 13.) Plaintiff also appears to argue that because she has invoked this court's admiralty jurisdiction over this tort case, "the exclusive applicable law in this matter is federal maritime law," perhaps suggesting that only a federal court would be able to exercise jurisdiction over this case. (*Id.* at 11, 13.) While it is not entirely clear that plaintiff is advancing this argument, it is clear that any such an argument plainly fails because "[f]ederal maritime jurisdiction is not, and has never been, entirely exclusive." *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 668 (9th Cir. 1997).[3] In short, plaintiff's opposition is largely unhelpful and fails to meaningfully address, let alone rebut, the arguments that defendants make in their motion.

Nonetheless, the court will proceed to consider the *Colorado River* factors in turn.

/////

/////

---

[3] Plaintiff's argument that the "savings-to-suitors" clause of 28 U.S.C. § 1333 requires this court to exercise jurisdiction over this action likewise fails. That clause essentially provides that "a plaintiff with *in personam* maritime claims has three choices: He may file suit in federal court under the federal court's admiralty jurisdiction, in federal court under diversity jurisdiction if the parties are diverse and the amount in controversy is satisfied, or in state court." *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997) (explaining that the savings-to-suitors clause "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation") (quoting *Madruga v. Superior Ct. of San Diego Cnty.*, 346 U.S. 556, 560 (1954)). Nothing in the savings-to-suitors clause permits a plaintiff to first file in state court, and then later change their mind as to which forum they prefer and file a duplicative action in federal court.

**A.     Which Court First Assumed Jurisdiction Over Any Property at Stake**

The first factor of which court first assumed jurisdiction over any property at stake is not relevant here because there is no property in dispute. As defendants note in their motion, in both this action and in the State Court Action, plaintiff seeks damages, not recovery of possession of any property, as relief on her claims of negligence and violations of a Nevada public safety statute. (Doc. No. 23-1 at 6.) Consequently, this factor does not apply in this case.

**B.     The Inconvenience of the Federal Forum**

As for the second factor of inconvenience of the federal forum, defendants acknowledge that this federal court, specifically the Sacramento courthouse of the Eastern District of California, is "admittedly not geographically far from the state courthouse location in Placer County." (Doc. No. 23-1 at 6.) Nevertheless, defendants contend that this federal forum is less convenient to some degree because Sacramento is further away from the incident location and the residence of non-party witness than the state courthouse in Placer County. (*Id.*) The court is not persuaded that the distance from the Placer County courthouse to this federal courthouse rises to the level of inconvenience contemplated by this factor. *See, e.g.*, *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) ("Although 200 miles is a fair distance, it is not sufficiently great that this factor points toward abstention. The district court did not err in finding this factor 'unhelpful.'").

Accordingly, this factor is neutral and does not weigh in favor or against the granting of a stay of this action.

**C.     The Desire to Avoid Piecemeal Litigation**

The third factor the court considers is the desire to avoid piecemeal litigation, which "occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258. As defendants correctly note in their motion, here, plaintiff filed the State Court Action and this action in two different jurisdictions (state court and federal court, respectively), yet in both actions, plaintiff alleges identical claims against the same defendants and seeks the same relief. (Doc. No. 23-1 at 6.) The

/////

6

court agrees with defendants' point that if this federal action proceeds, it will necessarily require duplicative effort and pose a substantial risk of inconsistent judgments.

Thus, consideration of this factor weighs heavily in favor of the granting of a stay of this action.

### D. The Order in Which the Forums Obtained Jurisdiction

The fourth *Colorado River* factor concerns the order in which the forums obtained jurisdiction. Under this factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 22. Here, it is undisputed that plaintiff filed the State Court Action first, on January 27, 2022, and it was not until April 21, 2023—fifteen months later—that plaintiff filed this federal action. Plaintiff asserts in her opposition that "[n]othing of substance has taken place in the Placer County Superior Court," and "[n]o depositions have been taken, no motions have been filed," though plaintiff acknowledges that the Placer County Superior Court conducted a case management conference on January 8, 2024 and that defendant AWS propounded written discovery in the State Court Action on January 25, 2024. (Doc. No. 27 at 8.) While there may have been minimal progress thus far in the State Court Action, there has not been substantial progress made in this federal action either. This court issued a scheduling order in November 2023, and a month later, defendants filed the pending motion to stay this case. (*See* Doc. Nos. 19, 23.) Moreover, plaintiff does not dispute that this federal action is duplicative of the State Court Action. Thus, this federal action is a "repetitive" lawsuit, and this fact, when coupled with "the fact that state court jurisdiction was invoked first[,] weighs heavily towards justifying a stay [] of the parallel federal action." *Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F. Supp. 277, 280–81 (C.D. Cal. 1983).

Accordingly, consideration of this factor weighs heavily in favor of the granting of a stay of this action.

### E. Whether Federal or State Law Provides the Rule of Decision on the Merits

Fifth, the court examines whether federal law or state law provides the rule of decision on the merits. Evaluating the merits of plaintiff's second cause of action alleging violations of

7

Nevada Revised Statute § 488.730 which, according to plaintiff, imposes duties on persons engaged in the business of renting or leasing motorboats, will undoubtedly rely on the application of Nevada state law, not federal maritime law.  As for plaintiff's first and third causes of action for negligence, plaintiff's complaint does not specify whether these claims are bought under federal maritime law or state law (whether that be Nevada or California).

While plaintiff does not explicitly clarify in her opposition brief that her negligence claims are brought under federal maritime law, the court infers this to be the case based on her statements that "California law is inapplicable to this case" and the "exclusive applicable law in this matter is the federal maritime law of the United States." (Doc. No. 27 at 12.)  In addition, plaintiff states in her opposition that she has sufficiently alleged federal admiralty jurisdiction over this tort case because she alleged that the incident occurred in navigable waters (i.e., Lake Tahoe) and the incident involved traditional maritime activity (i.e., boating).  (*Id.* at 12–13.)  Nevertheless, plaintiff does not address defendants' argument that even if maritime law governs her negligence claims, that does not automatically displace state law.  (Doc. No. 23-1 at 8) (citing *Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1188, 1200 (D. Alaska 2022)).

> Federal maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."  . . . [A] fundamental feature of maritime law is that "federal admiralty courts sometimes do apply state law" and "state law may be used to supplement federal maritime law so long as state law is 'compatible with substantive maritime policies.'"

*Garcia*, 605 F. Supp. 3d at 1200 (citations omitted); *see also In re DeMore's Mont. LLC*, No. 21-cv-00730-PHX-DJH, 2023 WL 5754103, at *4 (D. Ariz. Sept. 6, 2023) (finding that "Arizona law may supplant, but does not displace" federal inland navigation rules).

Thus, federal and state courts would have concurrent jurisdiction over plaintiff's claims. Indeed, plaintiff first filed a lawsuit against defendants asserting these same claims in state court. As a result, consideration of this factor is less significant. *See Nakash*, 882 F.2d at 1416 (noting that "[i]f the state and federal court[] have concurrent jurisdiction over a claim, this [fifth] factor becomes less significant").

/////

The court therefore finds that consideration of this factor is neutral and does not weigh in favor or against the granting of a stay of this action.

**F.     Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants**

Relevant to the sixth factor, "[a] district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.*, 656 F.3d at 981. Thus, "if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *Id.*

Here, the state superior court has the authority to address the rights and claims that are at issue in both actions; indeed, the exact same claims are brought against the exact same defendants in both cases. Consequently, it appears clear that plaintiff can adequately enforce any federal rights she asserts in the state court proceedings. Notably again, plaintiff originally elected to vindicate her rights by filing her lawsuit in state court.

Thus, consideration of this factor weighs in favor of the granting of a stay of this action.

**G.     The Desire to Avoid Forum Shopping**

The seventh factor considers "whether either party improperly . . . pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co., Inc. v. Strange Lan, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017). "In the *Colorado River* context, this Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem. Co.*, 914 F.2d at 1371.

As defendants emphasize in their motion, "[o]nly after failing to defeat [defendant] AWS' motion to transfer venue and more than a year after filing suit in state court, did plaintiff decide to bring her claims in this federal court." (Doc. No. 23-1 at 5.) In her opposition, plaintiff does not offer any counterargument to rebut defendants' assertion in their motion that plaintiff's filing of this federal action is a "brazen display of forum shopping." (Doc. No. 23-1 at 5.) Rather, plaintiff's opposition effectively concedes that she has engaged in forum shopping by admitting that she filed this federal action because the Los Angeles County Superior Court (her preferred

forum and where she had elected to litigate her claims) granted defendants' motion to transfer venue of the State Court Action to Placer County Superior Court (a forum that she did not prefer, and the transfer of which she had vigorously opposed). (*See* Doc. No. 27 at 6–8.)

Accordingly, consideration of this factor weighs heavily in favor of the granting of a stay of this action.

### H. Whether the State Court Proceedings will Resolve all Issues Before the Federal Court

The eighth and final factor concerns whether the state court proceedings will resolve all issues before the court. As noted above, "[w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. "[A] district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). Moreover, courts "should be particularly reluctant to find that actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Nakash*, 882 F.2d at 1417. Exact parallelism between the state and federal suits is not required, but "substantial similarity of claims is necessary before abstention is available." *Seneca Ins.*, 862 F.3d at 845 (citing *Nakash*, 882 F.2d at 1416).

Here, plaintiff's federal suit is not merely a "spin-off" of his state suit—it is identical. This court therefore has full confidence that the State Court Action will completely and promptly resolve the issues between the parties.

Accordingly, consideration of this factor weighs heavily in favor of the granting a stay of this action.

### I. Balancing the *Colorado River* Factors

As discussed above, five of the seven relevant factors weigh in favor of the granting of a stay of this action, and the remaining two factors are neutral. None of the factors weigh against the granting of a stay. Because almost every *Colorado River* factor weighs in favor of this court

staying this action, the court finds that this case presents exceptional circumstances making it appropriate to defer to plaintiff's proceedings in the State Court Action.

For these reasons, the court will grant defendants' motion to stay this action under the *Colorado River* doctrine.

## CONCLUSION

For the reasons explained above,

1. Defendants' motion to stay this action (Doc. No. 23) is granted;
2. This action is hereby stayed pending resolution of plaintiff's state court proceedings;
3. The parties shall file a joint status report within 120 days from the date of entry of this order, and every 120 days thereafter, to inform this court as to the status of plaintiff's state court proceedings; and
4. In addition, the parties shall file a notice informing this court that a final judgment has reached in plaintiff's state court proceedings, within fourteen (14) days of entry of that judgment by the state court.

IT IS SO ORDERED.

Dated:  **May 7, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE